## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EMILY GARBACZ | : NO.: 3:23-CV-01200-SES |
|         Plaintiff | : |
| | : CIVIL ACTION - LAW |
| v. | : |
| LM GENERAL INSURANCE COMPANY | : |
|         Defendant | : |

## TRIAL BRIEF OF DEFENDANT LM GENERAL INSURANCE COMPANY

Pursuant to Local Rules 7.8 and 39.7 and this Court's Pretrial Order dated August 2, 2024 (Doc. 26), Defendant LM General Insurance Company, by its attorneys, Candace N. Edgar, Esquire, Christopher W. Woodward, Esquire, and Marshall Dennehey, P.C., submits its Trial Brief, with respect to the upcoming jury trial that is currently scheduled to begin on January 28, 2025.

### I. Procedural History

On July 19, 2023, Plaintiff commenced the instant action against Defendant LM General Insurance Company ("LM General"), by filing a Complaint in the United States District Court for the Middle District of Pennsylvania. (Doc. 1). On September 6, 2023, Plaintiff filed an Amended Complaint, consisting of a single count for breach of contract involving the payment of underinsured motorist ("UIM") benefits for bodily injury she allegedly sustained in a motor vehicle accident on December 21, 2021. (Doc. 11). According to the Amended Complaint, Plaintiff's alleged injuries resulting from the underlying accident are (1) a

1

concussion with loss of consciousness; (2) fracture of seventh cervical vertebra; (3) fracture of shaft of right tibia and fibula; (4) lumbar injury; (5) multiple abrasions on face and neck with permanent scarring; and (6) lacerated lip. (Doc. 11 at ¶¶ 11-12). The pleading are closed, and the parties have completed discovery and exchanged their respective expert reports. A final Pretrial Conference was held on January 16, 2025 in anticipation of the upcoming jury trial currently scheduled to begin on January 28, 2025.

## II.  Statement of Facts and Anticipated Trial Testimony

### A.  Accident of December 21, 2021

This breach of contract claim involving the payment of UIM benefits arises from a motor vehicle accident on December 21, 2021 at the intersection of Agualinda Boulevard and S.W. 44th Terrace in Cape Coral, Florida. At the time of the accident, Plaintiff, who was then 15-years-old, was riding a bicycle with a family friend, Olivier Godlewski, who was also 15-years-old. The two were vacationing with their families together and staying at a nearby house being rented for the week.

No dispute exists that Plaintiff did not have the right-of-way as she crossed over the southbound lane of Agualinda Boulevard where she collided with the front, driver's side of Dennis Foreman's vehicle. Mr. Foreman did not have a stop sign or other traffic control device requiring him to stop for or yield to Plaintiff.

In her deposition, Plaintiff testified that her memory of the accident was limited. (Transcript of Plaintiff's deposition at p. 24, lines 15-20) ("I don't remember anything really. I just remember I was just trying to cross the road, and that's all I remember"). She remembered though that Mr. Godlewski had completely crossed the intersection before she began to come across. She also admitted that she did not look both ways before crossing the street and did not see any vehicle approaching before the accident occurred. She denied seeing Mr. Foreman's vehicle at any point before the accident and claimed to have no memory of being hit by his vehicle.

Mr. Godlewski testified that, immediately before the accident, he was riding his bicycle in front of Plaintiff on the opposing northbound lane of Agualinda Boulevard. The house their families were staying in was located on the intersecting road, so the two had to make a left turn across Agualinda Boulevard. Mr. Godlewski was able to safely do so and thought that sufficient room existed for Plaintiff to also make this turn safely, who he estimated was traveling approximately one car length behind him. His bicycle was still in motion when he heard Plaintiff yell, prompting him to turn around. When he did, he saw Plaintiff in the middle of the southbound travel lane being struck by Mr. Foreman's vehicle, which he described as traveling "fast" despite his fleeting glance of this vehicle. He acknowledged that the damage to Mr. Foreman's vehicle was to the front, driver's side. Mr. Godlewski would have

been on Mr. Foreman's right-hand side as Mr. Foreman approached the intersection where the accident occurred.

Mr. Foreman testified that he lives approximately one mile away from the intersection where the accident occurred. He described it as a residential area with bicyclists frequently traveling along the roadway. He confirmed that he had no stop sign and was traveling in his lane when Plaintiff suddenly appeared on her bicycle right in front of his vehicle. Upon seeing Plaintiff in front of his vehicle, Mr. Foreman immediately applied his brakes and attempted to swerve to the right, but could not avoid an impact. Mr. Foreman maintained that he was not speeding, and the distraction on his right-hand side he told police about at the accident scene was momentary, and that he immediately redirected his focus back to the roadway in front of him where Plaintiff on her bicycle suddenly appeared.

  **B. LM General Policy in Effect on Date of Accident**

On the date of the accident, Plaintiff's mother, with whom Plaintiff resided at the time of the accident, was the named insured of a Pennsylvania personal auto policy underwritten by LM General bearing policy number AOS-288-251277-40 ("LM General Policy"). The LM General Policy provided for $250,000 in UIM benefits, with stacking, for a total of $750,000 in UIM benefits[1]. Plaintiff previously

---

[1] It is well established that "in every insurance coverage dispute, an insurer's liability, absent a claim of bad faith, is limited by the applicable insurance policy limits…" Marlette v. State Farm Mut. Auto. Ins. Co., 57 A.3d 1224, 1230 (Pa. 2012) (holding

4

settled with Mr. Foreman for the $100,000 bodily injury limit available under his auto policy with Progressive American Insurance Company, entitling LM General to an offset or "credit" in this amount[2].

### C. Plaintiff's Alleged Accident-Related Injuries and Damages

At trial, LM General will present the videotaped deposition of Michael Banas, M.D., an orthopaedic surgeon who, based upon his physical examination of Plaintiff and review of her pertinent medical records and films, concluded that she sustained a C7 facet fracture and right fibula shaft fracture as a result of the accident, both of which have resolved in their entirety. Significantly, Dr. Banas disputed that Plaintiff sustained any injury to her low back in the underlying accident, despite her current complaints of ongoing low back pain with radiculopathy, based primarily upon a preexisting low back injury she sustained while tubing during a vacation in July 2021, five months before the underlying accident. A pre-accident lumbar MRI showed bulging discs at L4-5 and L5-S1, which when compared to studies completed after the accident, remained unchanged. Plaintiff's last physical therapy

---

that insured's recovery of delay damages in action to recover uninsured motorist ("UM") benefits was limited to molded amount of jury verdict as reflected by policy limits and not amount of jury's gross verdict, which exceeded policy limits).

[2] LM General's Motion *in Limine* seeking to preclude disclosure of the amount of insurance provided under Dennis Foreman's liability insurance policy, as well as the UIM coverage provided under the LM General Policy has been granted. (Doc. 28). Therefore, the amount of liability insurance and/or UIM benefits available under the LM General Policy will not be disclosed to the jury.

visit before the underlying accident was on December 3, 2021, only 18 days before the accident. She was to begin aquatic therapy the following month in January 2022 and had been referred to both a pain management doctor and orthopaedic surgeon prior to the accident for treatment of her low back pain. Immediately following the accident, Plaintiff did not complain of any acute lumbar pain and, at no point following the accident, did any of Plaintiff's treating doctors ever diagnose her with an aggravation of her preexisting degenerative lumbar disc disease. Therefore, Dr. Banas found no causal relationship between the subject accident and Plaintiff's low back pain or any future medical treatment she may undergo for it.

In her case-in-chief, Plaintiff will present the expert testimony of Dr. Sean Lager, an orthopaedic surgeon who is not a treating doctor of Plaintiff. He diagnosed Plaintiff with a C7 fracture and right fibula fracture. While Dr. Lager acknowledged Plaintiff's pre-existing low back injury, he opined that the accident made her low back pain "much worse" based upon Plaintiff's subjective complaints. He concluded that this condition is permanent, and that Plaintiff is a potential candidate for a lumbar fusion in the future if conservative treatment fails, including chiropractic treatment, physical therapy, and injections.

Plaintiff will also present the expert testimony of Dr. Marshall Miles, a non-treating plastic surgeon who opined that Plaintiff sustained permanent facial scarring from the underlying accident. Dr. Miles recommended future scar revision surgeries,

including scar dermabrasion and direct excision and reconstruction, as well as lasering.

Finally, Plaintiff will present the expert testimony of Varsha Desai, a life care planner, who has projected annual costs of $17,781-$18,039 for the recommended orthopaedic treatment of Plaintiff, which primarily involves her low back and right leg symptomology. Based upon a life expectancy for Plaintiff of another 61.9 years, Ms. Deasi estimated that the total cost of treatment over the course of Plaintiff's life is $1,100,644 - $1,116,614, plus another $10,100 estimated for future plastic surgery treatment for a total of $1,100,744 - $1,126,714.

## III. Anticipated Legal Issues at Trial

### A. Choice of Law Analysis Regarding Legal Duties of a Bicyclist

As stated above, the underlying accident occurred in Florida, but Plaintiff is seeking UIM benefits under the LM General Policy, which is a Pennsylvania policy. Although Plaintiff has not raised any choice of law dispute, LM General respectfully submits that none exists with regard to the duties owed by Plaintiff and Mr. Foreman at the time of the accident because Florida and Pennsylvania law do not conflict[3].

---

[3] Because choice of law analysis is issue specific, different states' laws may apply to different issues in a single case, a principle known as "depecage." See, e.g., Compagnie des Bauxites v. Argonaut–Midwest Ins. Co., 880 F.2d 685, 691 (3d Cir. 1989).

Specifically, under both Florida and Pennsylvania law, a bicycle is considered a vehicle, so a bicyclist has all of the same rights and duties as a driver of a motor vehicle on the roadway. Fla. Stat. Ann. § 316.2065(1); 75 Pa. C.S.A. §§ 102, 3501. Further, whether Plaintiff was pulling out from a stop sign on the intersecting road or making a left turn in front of Mr. Foreman's vehicle from the opposing travel lane, no conflict exists between Florida and Pennsylvania law that Plaintiff had the duty to yield the right-of-way to Mr. Foreman's vehicle at the time of the accident. Fla. Stat. Ann. §§ 316.123, 316.122; 75 Pa. C.S.A. §§ 3322, 3323(b).

In response to LM General's proposed Jury Instruction No. 14 citing the duties owed by a bicyclist under Florida law, Plaintiff objected on the basis that it "mischaracterized" Florida law, but, to date, has never provided any explanation or clarification as to the alleged mischaracterization. Because Florida and Pennsylvania law do not conflict on the issue of the duties Plaintiff and Mr. Foreman owed at the time of the accident, a choice of law analysis is unnecessary because it presents a "false conflict." See, e.g., Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006) (applying Pennsylvania choice-of-law rules) (holding "where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question"). Therefore, LM General has no objection to the Court instructing the jury on the duties a bicyclist owes under Pennsylvania law because those duties are the

same as those owed under Florida law. To the extent that Plaintiff is objecting to the jury being instructed at all on the duties Plaintiff owed as a bicyclist on the roadway at the time of the accident, LM General objects. Liability for the accident is a critical issue at trial and, if the Court never tells the jury what the legal duties Plaintiff owed at the time of the accident as a bicyclist on the roadway were, then the jury will be forced to speculate about them.

### B. Causation and Validity of Alleged Accident-Related Injuries

In addition to the apportionment of negligence for the underlying accident, the parties dispute causation of Plaintiff's alleged low back injury, as well as the severity and value of her injuries involving the neck, right leg/ankle, and head, including facial scarring which is hardly visible even without makeup. Specifically, the majority of Plaintiff's treatment concluded within six months of the accident, and she has not undergone any treatment at all for her alleged accident-related injuries during the past two years. Further, since the accident, she has gone on to successfully obtain her driver's license, graduate from high school, work a part-time job as a server at a local pizzeria, attend college in pursuit of a nursing career, and take multiple trips, including trips to Florida and Poland within one year of the underlying accident.

## IV.   Conclusion

In sum, it is Plaintiff's burden to prove at trial, by a preponderance of the evidence, that Dennis Foreman was negligent, that his negligence was a factual cause of harm to her, and that his negligence is more than her own. If Plaintiff is successful in proving these three things, then she must also prove that the amount of her damages for the injuries she sustained in the underlying accident exceed the $100,000 bodily injury limit of Mr. Foreman's auto policy. While Plaintiff's involvement in the underlying accident is unfortunate, LM General respectfully submits that Plaintiff's own negligence was the factual cause of her harm, and that she successfully recovered from any injury she sustained in the underlying accident years ago.

|  |  |
|---|---|
| | **MARSHALL DENNEHEY, P.C.** |
| Date: 01/21/2025 | BY: *Candace N. Edgar* |
| | Christopher W. Woodward, Esq. 316580 |
| | Candace N. Edgar, Esq. 209127 |
| | 200 Corporate Center Drive, Suite 300 |
| | Camp Hill, PA 17011 |
| | P: (717) 651-3708 - F: (717) 651-3707 |
| | cwwoodward@mdwcg.com |
| | cnedgar@mdwcg.com |
| | *Attorneys for Defendant LM General Insurance Company* |

## CERTIFICATE OF SERVICE

I, Candace N. Edgar, Esquire, do hereby certify that a true and correct copy of the foregoing was served upon the following via Electronic Filing System on the date specified below:

Jenna N. Leo, Esquire
Hannah Molitoris, Esquire
Alexander C. Hyder, Esquire
MORGAN & MORGAN PHILADELPHIA PLLC
2005 Market Street, Suite 350
Philadelphia, PA 19103
*Attorneys for Plaintiff*

**MARSHALL DENNEHEY, P.C.**

Dated: 01/21/2025            BY: *Candace N. Edgar*
Candace N. Edgar, Esquire
*Attorneys for Defendant LM General Insurance Company*